ALBANY,
August, 1818.

SUCKLEY
v.
FURSE.

SUCKLEY *against* FURSE.

A bill of exchange was drawn by the defendant on A. in favour of B., who sold it to the plaintiff. A. who resided in *England*, accepted the bill, but did not pay it, and it was returned to the plaintiff protested. The plaintiff then drew a bill upon A. and the defendant jointly, for the amount of the former bill, with damages, which was accepted by A. only, but was not paid. Held, in an action against the defendant as drawer of the first bill, that he was not discharged by A.'s acceptance of the second bill.

Where a bill of exchange was drawn here, upon a person in *Great Britain*, during the late war with that country, for supplies furnished by the payee to a *British* vessel authorized by act of congress to sail from here to an enemy's port, which was sold by the payee to the plaintiff, who remitted it to *Great Britain* for collection, it was held that the remittance of the bill was within the protection afforded to the original transaction, and was not illegal. An objection not taken at the trial cannot be raised on the argument of the case at bar.

THIS was an action of *assumpsit* on a bill of exchange, dated at *New-York*, the 7th of *November*, 1812, drawn by the defendant, on *Edward Angove*, of *Falmouth*, in *England*, in favour of *Taylor* and *Newman*, or order, for 331*l*. 3*s*. 6d. sterling, payable in *London*, thirty days after sight, and endorsed by *Taylor* and *Newman* to the plaintiff. The cause was tried before Mr. J. *Spencer*, at the *New-York* sittings, in *April*, 1817.

The defendant was captain of the *British* packet *Swift-sure*, and *Taylor* and *Newman*, as his agents, furnished the packet with supplies, a short time before the date of the bill, by the permission of the collector of the port of *New-York*, and the defendant drew the bill on account of these supplies, and sold it to the plaintiff, who had no concern in the transaction for which it was given. The bill, on being transmitted to *England*, was accepted by *Angove*, on the 5th of *January*, 1813, but not being paid, was returned protested to the plaintiff, who thereupon drew a bill on the defendant and *Angove* jointly, for the amount of the former bill, with twenty per cent. damages, at 60 days after sight, in favour of *Thomas Holy*, who was a partner of the plaintiff, and resided in *England*. The second bill was accepted by *Angove*, but not by the defendant, and was returned to the plaintiff unpaid.

The defendant's counsel objected, that the acceptance of the second bill by *Angove only*, was a discharge of the drawer of the first bill, which objection was overruled by the judge, who, however, permitted the point to be reserved, and a verdict was accordingly taken for the plaintiff, subject to the opinion of the court on a case made, containing the facts above stated.

*Slosson*, for the plaintiff. The only question is, whe-

ALBANY,
August, 1818.

SUCKLEY
v.
FURSE.

ther, by the acceptance of the second bill, the drawer of the first bill was discharged? He could be discharged on two grounds only, either by the second bill being a satisfaction of the first; or by the holder giving a new credit, by extending the time of payment. 1. Taking a second bill is no payment or satisfaction of the first, or original debt. (*Murray* v. *Gouverneur and Kemble,* 2 *Johns. Cases,* 438. *Tobey* v. *Barber,* 5 *Johns. Rep.* 68. *Johnson* v. *Weed,* 9 *Johns. Rep.* 310.)

2. It is manifest that there was no intention on the part of the plaintiff to waive his right to recover against the defendant as drawer of the first bill. The second bill was not drawn to obtain payment of *Angove* only, but of the defendant also. The acceptance of the second bill by *A.* alone, was a dishonour of the bill, for it was not accepted according to its tenor. (*Chitty on Bills,* 127. 2d *ed.*) Giving time, or taking security of the acceptor, does not discharge the drawer, if he has no effects in the hands of the drawee, and notice of non-payment is not necessary in that case. (*Chitty on Bills,* 213. 2 *Esp. Rep.* 516, 517. 1 *Bos. & Pull.* 652. *Hoffman* v. *Smith,* 1 *Caines,* 157.)(*a*)

Again; the plaintiff is not bound by the act of an agent who exceeded his authority; *Holy* had no authority to receive the acceptance of *A.* alone.

*T. A. Emmet,* contra. *Holy* was not an agent, but a party equally interested with the plaintiff. They were partners.

In *Gould* v. *Robson and another,* (8 *East's Rep.* 576.) where the holder of a bill, which had been accepted, agreed to draw a new bill on the acceptor, at a future date, and to keep the original bill as security, it was held to be such a giving of time and new credit to the acceptor, as discharged the endorser, though the drawer had no effects in the hands of the acceptor. (*Withall* v. *Masterman,* 2 *Campb. N. P.* 179. *Tindall* v. *Brown,* 1 *Term Rep.* 167. 3 *Bro. C. C.* 1. *Chitty on Bills,* 212.)(*b*)

(*a*) Vid. *Collot* v. *Haigh,* 3 *Campb. N. P.* 282. *Walwyn* v. *St. Quintin,* 1 *Bos. & Pull.* 652. *English* v. *Darby,* 2 *Bos. & Pull.* 61. *Bridges* v. *Berry,* 3 *Taunt* 130. *Raggardt* v. *Axmore,* 4 *Taunt.* 730.

(*b*) *Bishop* v. *Rowe,* 3 *M. & Selw.* 362.

· There is another objection to the plaintiff's recovery. The remitting the bill to *England*, during war, was illegal ; but as the effect of the war on the contracts of our citizens has been so fully discussed in a case lately argued and decided,(*a*) it is unnecessary to argue the question here. The cases mentioned by *Chitty*, (*L. of N.* 17. 27.) are exceptions, and recognise the general rule. The plaintiff had no concern in furnishing the supplies to the *British* packet. The bill was drawn to place funds in *England*, and was a distinct transaction.

*Slosson*, in reply, said, that as to the suggestion that *H.* was a party in interest, and not an agent, the fact was settled by the finding of the jury.

As to the second point ; on the declaration of war, an act of congress was passed, (6 *July*, 1812. 12 *Cong.* 1 sess. ch. 129. s. 5.) which allowed *British* packets which had sailed before *September* to be received into our ports. The *Swiftsure* was admitted into our ports, under the act. She was exempted from the operation of war, and it was lawful to furnish her with supplies, and to receive payment for them. · The bill drawn by the defendant was a good bill. It makes no difference whether the bill was remitted by the payees or by the plaintiff. The objection applies equally to both. Unless the bill could be negotiated by the payees, it was of no value. The payees could not go to *England* to receive the money with their own hands. In *Kensington* v. *Inglis*, (8 *East*, 273.) where an enemy's ship was *licensed* to bring certain goods from the enemy's country, belonging to *British* subjects, the *insurance* of those goods by the owners in *England* was held to be *legalized*, and the insured might maintain an action on the policy.

YATES, J. delivered the opinion of the court. There can be no doubt but that the law discharges the indorser of a bill of exchange, when the holder gives time to the acceptor after it has been dishonoured. (1 *Term Rep.* 167. 8 *East*, 576.) but this is not such a case ; here the bill having been

(*a*) *Griswold* v. *Waddington, ante*, p. 57.

dishonoured, and notice duly given, *Suckley*, the holder, draws for the amount of the first bill, with damages and charges, on *Furse* the drawer, and *Angove*, the acceptor of that bill, jointly, at 60 days sight, in favour of *Thomas Holy*, which was accepted by *Angove*, but not by the defendant *Furse*. This bill was afterwards returned and never paid, so that without adverting to a partnership between them, on the face of the transaction, it is evident that the intention of the plaintiff was, that the sixty days should be given for payment, provided both accepted ; and then it could not have affected the plaintiff's remedy against either. From the knowledge both had of the original transaction, it must be presumed that they knew that no greater or other power or authority had been conferred on *Holy*, the agent ; his act, therefore, in taking the acceptance of *Angove* alone, did not bind the plaintiff, and, consequently, could not discharge the liability of *Furse*, as drawer of the original bill, on the ground of an agreement for an extension of time of payment, or the giving of a new credit. No such agreement had ever existed between the parties. It was evidently sent to *Holy* for collection only. To discharge an *indorser* even, an express agreement must be shown. The case of *Gould* and *others* v. *Robson*, (8 *East*, 576.) is such a case. There the holder of the bill had taken part payment from the acceptor, and agreed to take a new acceptance from him for the remainder, payable at a future date. The new bill here was drawn without any agreement ; and being for an existing debt, could not affect the original liability of *Furse ;* for it is a settled rule of law, that a bill shall not be a discharge of a precedent debt, unless it be so expressly agreed between the parties. In *Clark* v. *Mendel*, (1 *Salk.* 124.) it is stated, that if part be received, it shall only be a discharge of the old debt for so much. And Lord *Kenyon* (1 *Esp. N. P. Cases*, 3. *Stedman* v. *Gooch*) says, " that if in payment of a debt, the creditor is content to take a bill or note, payable at a future day, he cannot legally commence an action on the original debt until such bill or note becomes payable, or default is made ; but if such bill or note is of no value, as if, for example, it be drawn on a person who has no effects

SUCKLEY
v.
FURSE.

of the drawer in hand, and who therefore refuses it, in such case he may consider it as waste paper."

The plaintiff's right of action then, against the drawer, was not affected by the second bill. But another objection to the verdict has been made on the argument; that the remitting of the bill to *England* in time of war was illegal, and that no action against the defendant could grow out of such illegal act.

As to this objection, it might be observed, that it does not appear by the case, that the illegality of remitting the bill was adverted to by the defendant's counsel at the trial, which might, perhaps, now be deemed sufficient to conclude the party, but if the objection had been made, it would have been of no avail. The act of congress of the 6th of *July*, 1812, (1 *session*, 12*th Cong. chap.* 129.) authorizes vessels of this sort to sail to the enemy's port, and, of course, those who afford the necessary supplies to the captain, for a voyage thus legalized, are exempted from the controlling principles growing out of a state of war. The same protection afforded by law to *Taylor* and *Newman*, who procured the supplies, must be extended to *Suckley*, and to all those having dealings of the same description. The case of *Kensington* v. *Inglis* and *another*, (8 *East*, 273.) goes much further, and appears to me to be conclusive on the subject. There a license had been given to trade with an alien enemy for specie and goods, to be brought from the enemy's country in his ships, into a *British* colonial port, and it was held, that an insurance on the enemy's ship, as well as on the goods and specie put on board, was incidentally legalized ; and that it was competent for the *British* agent of both parties, in whose name the insurance was effected, to sue upon the policy in time of war, the trust not contravening any rule of law or of public policy. In this case, the privilege to sail clearly comprehended the right of procuring and affording the necessary supplies, to enable her to prosecute her voyage, for the amount of which the bill in question was drawn. The plaintiff, therefore, on both grounds, is entitled to judgment on the verdict.

Judgment for the plaintiff.